UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICKEY A. MACKEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-01913 |
| | § | |
| FLUOR INTERCONTINENTAL INC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Pending before the Court is the defendant's, Fluor Intercontinental, Inc.'s ("Fluor"), motion to dismiss the plaintiffs' original complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 8(a) (Dkt. No. 5).  The plaintiffs, Rickey A. Mackey, Baldemar Mercado, and Goldie Byrd filed a response in opposition (Dkt. No. 13), to which Fluor filed a reply (Dkt No. 14).  After having carefully considered the motion, response, reply, and the applicable law, the Court determines that Fluor's motion to dismiss should be **DENIED**.

**II.    FACTUAL OVERVIEW**

The plaintiffs are former employees of Fluor, a government contractor, that worked in the Property Department.  Fluor was one of three contractors that provided logistical support services to supplement the U.S. Army's operations in Afghanistan pursuant to the Logistics Civil Augmentation Program IV ("LOGCAP IV").  Under the LOGCAP IV contract, the Department of Defense would issue task orders that resulted in the award of a contract to one of the three contractors, taking into account the best value and cost.  Fluor's first task order included a request to provide services related to the management of governmental property throughout Afghanistan.

The plaintiffs allege that Fluor committed violations of the Federal Acquisition Regulations ("FAR"), which was promulgated by the government to govern the conduct of executive agencies in administering government contracts.[1] According to the LOGCAP IV contract, Fluor was required to comply with certain provisions of the FAR that required it to, *inter alia*: (1) "have a process to create and provide reports of discrepancies, loss of Government property, physical inventory results, audits and self-assessments, corrective actions, and other property related reports as directed by the Contracting Officer"; and (2) in the event of lost government property, "have a process to enable the prompt recognition, investigation, disclosure and reporting of loss of Governmental property", and report incidents of lost property "as soon as the facts become known".[2]

Under the FAR, contractors are not liable for the loss of government property except in the limited circumstance where the loss "is the result of willful misconduct or lack of good faith in the part of the Contractor's managerial personnel."[3] To comply with the FAR's property inventory and recording requirements, Fluor developed its own internal written policies and procedures—the Loss, Theft, Damaged, or Destroyed property ("LTDD"), which required that a report to be made to the government allowing the Property Administrator to investigate any property loss to determine Fluor's liability.

Fluor asserts that the LOGCAP IV contract did not require it to certify compliance with the FAR, with its internal procedures, or with any other inventory guidelines in order to be paid. Instead, Fluor argues that its primary obligation under the FAR was to develop procedures to manage government property within its possession and to have a process in place to enable the prompt recognition, investigation, disclosure and reporting of loss of Governmental property.

---

[1] 48 C.F.R. § 1.101.
[2] 48 C.F.R. § 52.245-1 (f)(vi) and (vii).
[3] 48 C.F.R. § 52.245-1 (h)(1)(ii).

The plaintiffs alleges that Fluor perpetuated a "scheme" to intentionally conceal and cover up lost or stolen government property to avoid liability for unaccounted for and grossly mismanaged government property. The plaintiffs also allege that Fluor's conduct violated its internal LTDD procedures and the FAR. The plaintiffs aver that they were unlawfully discharged after reporting this scheme to Fluor's management in violation of the anti-retaliation provision of the False Claims Act ("FCA"). Fluor argues that the plaintiffs' original complaint does not allege that Fluor failed to provide goods or services for which it billed the Government, or that Fluor made any false representation concerning compliance with its internal procedures as a condition of payment. Therefore, Fluor urges that the plaintiffs' actions did not rise to the level of protected activity necessary to trigger the FCA's anti-retaliation protections. As a consequence, Fluor urges that the plaintiffs' claims of retaliation should be dismissed with prejudice.

## III.   STANDARD OF REVIEW

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). A dismissal for failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure (9)(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993)). Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on

the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See Twombly* at 563 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds)); *see also, Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

## IV. ANALYSIS & DISCUSSION

### A. The Plaintiffs' Retaliation Claim Under the FCA

The Court denies Fluor's motion to dismiss the plaintiffs' suit because the Court finds that the plaintiffs' allegations, taken as true, state a retaliation violation. "The purpose of the [FCA] . . . is to discourage fraud against the government, and the whistleblower provision is intended to encourage those with knowledge of fraud to come forward". *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). The Act was "primarily directed against government contractors' billing for nonexistent or worthless goods or charging exorbitant prices for delivered goods, but it also interdicts material misrepresentations made to qualify for government privileges or services." *Coleman v. Disabled Am. Veterans*, 193 F.3d 520 (5th Cir. 1999) (quoting *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460-61 (5th Cir. 1977). That same logic dictates that a material misrepresentation designed to avoid contractual obligations are equally volitive of the Act. Specifically, the FCA's anti-retaliation provision states the following:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in

furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

Thus, an employee bringing an FCA retaliation claim must show that: (1) he or she engaged in protected activity; (2) his or her employer knew the employee engaged in protected activity; and (3) his or her employer took adverse action because of it. *United States ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 371–72 (5th Cir. 2011) (citing 31 U.S.C. § 3730(h)).

### 1. *Protected Activity*

"A protected activity is one motivated by a concern regarding fraud against the government." *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (citing *Riddle v. Dyncorp Int'l, Inc.*, 666 F.3d 940, 941 (5th Cir. 2012).

In their original complaint, the plaintiffs allege that in February 2012, they "began to express concerns to [their] superiors over Fluor's false property loss reporting." Specifically, they "informed the Materials Directors, Tony Montalvo ("Montalvo') and Jarrold Reeves ("Reeves") that there were clear deviations from well-established federal regulations and Fluor's own protocol." In addition, they expressed concerns to their supervisor, Juan Jones ("Jones"), in department meetings. The plaintiffs continued reporting the concerns during weekly staff meeting and conference calls. As a consequence, by October 30, 2012, Fluor's false LTDD reporting had resulted in $791,426.00 in government property loss. The plaintiffs continued to complain about the false LTDD reporting through August of 2013, at which time a meeting was called to investigate the complaints. At the meeting, it was reported that Fluor's "Materials Department was lying to the Government in its reports, the entire materials program was losing large amounts of materials, and no one was being held responsible." These pleadings are

sufficient to demonstrate that the plaintiffs engaged in protected activity within the meaning of the FCA.

2.  *Notice*

The plaintiffs also allege that Fluor knew that they were engaging in protected activity because after their concerns were brought forth, Fluor attempted to deter their efforts to address the issues. "Notice can be accomplished by expressly stating an intention to bring a [FCA] suit, but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility." *U.S. ex rel. George v. Boston Scientific Corp.*, 864 F. Supp. 2d 597, 608 (S.D. Tex. 2012) (Rosenthal, J.) (quoting *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1262 (D.C. Cir. 2004).

As support of this element, the plaintiffs' original complaint asserts that after lodging their complaints, management tried to ignore the concerns and visibly expressed anger. On one occasion, Fluor threatened to commence a civil suit against the plaintiffs for slander. In addition, resources were allegedly stripped from the plaintiffs eliminating their ability to detect the false reporting. Moreover, meetings were called to investigate their concerns. Importantly, the plaintiffs warned Fluor that they would notify the Government of any losses "as required by the Government" and not participate in the scheme. From these assertions, a factfinder could reasonably conclude that the employer was on notice that litigation was a reasonable possibility.

3.  *Causation*

Lastly, the plaintiffs assert that they were all retaliated against for raising their concerns regarding the false LTDD reports. To establish the merits of the last element of a FCA retaliation claim, the employee must allege that the employer's "retaliation was motivated by the

protected activity." *U.S. ex rel. George v. Boston Scientific Corp.*, 864 F. Supp. 2d 597, 609 (S.D. Tex. 2012) (Rosenthal, J.) (citing *Shekoyan v. Sibley Int'l.*, 409 F.3d 414, 422 (D.C. Cir. 2005)) (citation omitted). Here, the allegations in the challenged original complaint are that the plaintiffs began complaining about the legality of the false LTDD reporting in February 2012, and continued. The plaintiffs contend that they were threatened with a civil suit for slander; subjected to retaliatory harassment including a hostile work environment, denied the proper resources to perform their job functions, denied promotions, were demoted, advised to consider resigning, and ultimate termination. On one occasion, one of the plaintiffs alleges that the verbal explanation for his termination was "because he knew too much about Fluor's property problems[.]" Thus, given these allegations, the plaintiffs have adequately alleged causation. As a result, the plaintiffs have alleged a FCA retaliation claim.

### B.     Fluor's Rule 9(b) Motion

The Court denies Fluor's motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b), because the Court determines that the plaintiffs have pled fraud with sufficient particularity. Rule 9(b) does not operate in isolation, but rather should be read "as part of the entire set of rules, including Rule 8(a)'s insistence upon 'simple, concise, and direct' allegations." *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir. 1997). Rule 9(b) is context specific and flexible and must remain so to achieve the remedial purpose of the FCA. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). Because of Rule 9(b)'s remedial purpose, the Fifth Circuit has opted to:

> [R]each for a workable construction of Rule 9(b) with complaints under the False Claim Act; that is, one that effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud. We hold that to plead with particularity the circumstances constituting fraud for a [FCA] claim, an employee's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by

alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.

*Id.* at 190.

The plaintiffs have met this standard. In their original complaint, the plaintiffs provide specific descriptions of an alleged chain of events leading to the plaintiffs' purported discovery of false reporting and their attempts to ameliorate the situation. The plaintiffs' allegations provide the specific dates that they acquired the knowledge, with whom they spoke, what emails they sent and received, and the meetings they attended regarding the issues. The plaintiffs also identified Fluor's allege false LTDD reporting which was allegedly submitted to the government. The Court recognizes that the plaintiffs' original complaint does not identify the specific False Claim Act provision that they assert Fluor violated. However, these facts, when taken as true, establish that Fluor engaged in acts that may fall within the ambit of the FCA's anti-retaliation provision. Accordingly, the Court finds that the plaintiffs have pled their fraud claim with sufficient specificity and denies Fluor's Rule 9(b) motion. However, the Court orders the plaintiffs to amend their complaint within 60 days consistent with this opinion. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

V.   **CONCLUSION**

Based on the foregoing analysis and discussion, Fluor's motion to dismiss is **DENIED**.

It is so **ORDERED**.

SIGNED on this 16th day of October, 2015.

_____
Kenneth M. Hoyt
United States District Judge